Koltun v Azbel (2025 NY Slip Op 03054)

Koltun v Azbel

2025 NY Slip Op 03054

Decided on May 21, 2025

Appellate Division, Second Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided on May 21, 2025
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

ROBERT J. MILLER, J.P.
DEBORAH A. DOWLING
LILLIAN WAN
DONNA-MARIE E. GOLIA, JJ.

2023-03735
 (Index No. 511579/19)

[*1]Michael Koltun, etc., respondent, 
v
Mark Azbel, etc., defendant, Maimonides Medical Center, appellant.

McAloon & Friedman, P.C., New York, NY (Gina Bernardi Di Folco of counsel), for appellant.
Mark M. Basichas & Associates, P.C., New York, NY (Aleksey Feygin of counsel), for respondent.

DECISION & ORDER
In an action, inter alia, to recover damages for medical malpractice, etc., the defendant Maimonides Medical Center appeals from an order of the Supreme Court, Kings County (Genine D. Edwards, J.), dated April 3, 2023. The order, insofar as appealed from, denied that branch of that defendant's motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against it.
ORDERED that the order is affirmed insofar as appealed from, with costs.
On March 14, 2018, Dilbar Koltun (hereinafter the decedent) presented to the emergency department of the defendant Maimonides Medical Center (hereinafter the hospital) complaining of respiratory distress and showing a significant amount of edema. The decedent was diagnosed with, among other things, acute respiratory failure, cor pulmonale, and pulmonary hypertension with right-sided heart failure. The decedent was placed on a BiPAP machine to receive supplemental oxygen and was later admitted to the cardiac intensive care unit. During the night of March 14, 2018, into the early morning hours of March 15, 2018, the decedent appeared to be "[h]ypotensive, tachycardic, [and] hypoxic," and was showing signs of poor circulation, specifically a "bluish discoloration" of her fingers. The decedent was intubated and died shortly thereafter.
In May 2019, the plaintiff, as administrator of the decedent's estate, and asserting a derivative claim on his own behalf, commenced this action, inter alia, to recover damages for medical malpractice. The plaintiff alleged, among other things, that the hospital was negligent in its care and treatment of the decedent because the hospital's personnel failed to timely and properly address the decedent's hypoxia in that the hospital failed to intubate the decedent earlier, thereby resulting in the decedent's death. Following the completion of discovery, the hospital moved for summary judgment dismissing the complaint insofar as asserted against it. In an order dated April 3, 2023, the Supreme Court, inter alia, denied that branch of the hospital's motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against it. The hospital appeals.
"'The essential elements of medical malpractice are (1) a deviation or departure from accepted medical practice, and (2) evidence that such departure was a proximate cause of injury'" (Kunwar v Northwell Health, 229 AD3d 528, 532, quoting Mendoza v Maimonides Med. Ctr., 203 AD3d 715, 716; see Glassman v Caremount Med., P.C., 226 AD3d 878, 879). "'In order to sustain this prima facie burden, the defendant must address and rebut any specific allegations of malpractice set forth in the plaintiff's complaint and bill of particulars'" (Vargas v Lee, 207 AD3d 684, 685, quoting Wiater v Lewis, 197 AD3d 782, 783; see Ciceron v Gulmatico, 220 AD3d 732, 734). "'[A] defendant's expert's affidavit or affirmation that merely recount[s] the treatment rendered and opine[s] in a conclusory manner that such treatment did not represent a departure from good and accepted medical practice is insufficient to meet this burden'" (Martinez v Orange Regional Med. Ctr., 203 AD3d 910, 912 [internal quotation marks omitted], quoting Marsh v City of New York, 191 AD3d 973, 973-974).
Here, the Supreme Court properly denied that branch of the hospital's motion which was for summary judgment on the cause of action alleging medical malpractice insofar as asserted against it. In support of its motion, the hospital submitted, among other things, a transcript of the deposition testimony of Leah Dancy, one of the doctors responsible for the decedent's care, as well as the decedent's medical records. Dancy testified that a blood oxygen saturation level between 30 to 50 was indicative of severe hypoxia, along with "looking blue and be[ing] in severe distress." Dancy stated that, at some unknown point, the decedent purportedly disconnected herself from the BiPAP machine and that was "a sign that [the decedent was] agitated . . . and need[ed] to be addressed." Dancy further testified that there were multiple points from 3:52 p.m. on March 14, 2018, to 1:41 a.m. on March 15, 2018, where the decedent's blood oxygen saturation level was not recorded and that, as noted during the physical examinations of the decedent, the decedent had some "blueish discoloration." Moreover, the decedent's medical records indicated that at 10:15 p.m. on March 14, 2018, the decedent had "[s]welling and weeping to whole body with discoloration to right lower extremity. Poor circulation noted to fingers with bluish discoloration." Then, at 12:28 a.m. on March 15, 2018, the decedent appeared "[h]ypotensive, tachycardic, hypoxic," her blood oxygen saturation level was "poor," and her readings showed "prolonged periods of Sats in th[e] 30-50 range."
The hospital's medical expert, Mark S. Silberman, stated in an affidavit in support of the hospital's motion that the decedent's blood oxygen saturation level was appropriately maintained and monitored while she was in the hospital's care and opined in a conclusory manner that the hospital did not depart from good and accepted medical practice because "there were no good treatment choices available" (see Martinez v Orange Regional Med. Ctr., 203 AD3d at 913). He also noted that there were times that the decedent's blood oxygen saturation level was either reported to be extremely low, indicating severe hypoxia, or not recorded at all. Silberman further stated that "[i]ntubation could lead to cardiac arrest and death, but a failure to intubate would lead to progressive respiratory failure, also resulting in death." The hospital's evidentiary submissions failed to eliminate triable issues of fact regarding whether the hospital's failure to intubate the decedent earlier or to take other similar measures when the decedent was showing signs of hypoxia was a departure from accepted medical practice and whether that failure proximately caused or contributed to the decedent's death (see Ciceron v Gulmatico, 220 AD3d at 735; Martinez v Orange Regional Med. Ctr., 203 AD3d at 913; Macias v Ferzli, 131 AD3d 673, 676).
Accordingly, the Supreme Court properly denied that branch of the hospital's motion which was for summary judgment dismissing the cause of action alleging medical malpractice insofar as asserted against it, regardless of the sufficiency of the plaintiff's opposition papers (see Winegrad v New York Univ. Med. Ctr., 64 NY2d 851, 853).
MILLER, J.P., DOWLING, WAN and GOLIA, JJ., concur.
ENTER:
Darrell M. Joseph
Clerk of the Court